

I N T H E

# Court of Appeals of Indiana

Roderick Woodard-Ward,

*Appellant-Defendant*



FILED

Sep 25 2025, 8:46 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 25, 2025

Court of Appeals Case No.
24A-CR-1864

Appeal from the Marion Superior Court

The Honorable Marshelle D. Broadwell, Judge

Trial Court Cause No.
49D07-2212-F3-34632

---

**Opinion by Judge Bradford**

Judges Pyle and Kenworthy concur.

**Bradford, Judge.**

# Case Summary

[1] Roderick Woodard-Ward appeals his conviction for Level 5 felony battery resulting in serious injury. Woodard-Ward contends that the trial court abused its discretion in admitting certain evidence and in instructing the jury. He also contends that the evidence is insufficient to rebut his self-defense claim. We affirm.

# Facts and Procedural History

[2] In early December of 2022, Michael Mathis was in custody at the Marion County Jail. On the evening of December 4, a group of persons, including Woodard-Ward, asked Mathis to construct a device for them so that they could smoke marijuana. Mathis said that he could not do so because he no longer possessed the supplies necessary to construct the device. This angered the group, who threatened to "jump" Mathis if he did not construct the requested device. Tr. Vol. III p. 171.

[3] The next morning, Mathis decided to go to Woodard-Ward's cell to "stand [his] ground" and to show that he was "not going to back down" so that the others would "kind of ease off." Tr. Vol. III p. 171. When he did so, he was "[a]bsolutely" intending to thwart a future confrontation. Tr. Vol. III p. 171.

He went to Woodard-Ward's cell and told Woodard-Ward that "you ain't going to stand on me. This ain't going to happen. You can pop your own socket. Figure it out yourself."[1] Tr. Vol. III p. 168.

[4] In response, Woodard-Ward flashed a "hawk" or shank, *i.e.*, a jailhouse knife, at Mathis. Tr. Vol. III p. 147. After seeing Woodard-Ward's shank, Mathis "went for him[,]" "hit him in the mouth," "threw [his] arm over him[,]" and "tried to grab the shank out of his hand. Tr. Vol. III p. 147. As Mathis tried to grab the shank, his "shoulder came out of [the] socket[,]" leaving him unable "to use his arm." Tr. Vol. III p. 147. Despite his shoulder coming out of its socket, in an attempt to keep from getting stabbed, Mathis was able to "get [the shank] out of" Woodard-Ward's hand. Tr. Vol. III p. 147. After disarming Woodard-Ward, Mathis attempted to leave Woodard-Ward's cell. As Mathis attempted to exit the cell, another inmate named Twitty dragged Mathis back into the cell.[2] Woodard-Ward began battering Mathis, stomping on his head "about four or five times." Tr. Vol. III p. 148. Jail deputies eventually stopped the fight, but not before Mathis had suffered his "head[ being] spread open in three different places[,]" which required multiple staples to close; a tooth being knocked out; and his shoulder being dislocated. Tr. Vol. III p. 148.

---

[1] Mathis defined "ain't going to stand on me" as "[y]ou're not going to threaten me. You're not going to scare me. You're not going to try to intimidate me to do what you want me to do just because you got a group of people to back you up." Tr. Vol. III p. 172. And the reference "pop your own socket" referred to the creation of the device that would enable Woodard-Wood and the others "to make a flame so they could smoke their weed." Tr. Vol. III p. 155.

[2] Twitty was later charged with a crime based on his involvement.

[5]     On December 28, 2022, the State charged Woodard-Ward with Level 3 felony criminal confinement, Level 5 felony battery resulting in serious bodily injury, and Level 5 felony being a prisoner in possession of a dangerous device or material. Mathis testified at Woodard-Ward's trial about the battery and identified his assailant as "Diamond Teeth[,]" which was the name Mathis "kn[e]w him by" because of Woodard-Ward's "diamond encrusted teeth." Tr. Vol. III pp. 174, 192.

[6]     Marion County Sheriff's Lieutenant Allen Ward, who was employed "as a lieutenant over [in] the criminal gang intelligence unit[,]" also testified. Tr. Vol. III p. 176. As part of his employment, Lieutenant Ward conducted criminal investigations at the Marion County Jail. After being notified of the battery, Lieutenant Ward reviewed surveillance footage captured by the jail's security cameras. As a supervisor, he was able to log into the jail's surveillance-camera system. Although he could view the footage, Lieutenant Ward could not manipulate the recordings in any way. After reviewing the footage, Lieutenant Ward asked his IT unit to create a link for him to download.[3] Lieutenant Ward testified that he had reviewed the contents of Exhibit 1 "multiple times" and confirmed at trial that it contained the same footage that he had reviewed shortly after the battery occurred. Tr. Vol. III p. 179.

---

[3] This link was ultimately transferred to a flash drive, which was initialed by Lieutenant Ward and admitted as Exhibit 1.

Woodard-Ward objected to the admission of Exhibit 1, arguing that

> [Lieutenant Ward] said it was provided by their IT unit. IT provides it. We don't know how that was created. We don't have anybody from here from IT to create some kind of chain of custody from downloading it to burning it, to giving it to him. Somebody from IT needs to testify to lay the proper foundation. I understand that he was given something and I understand it was that, but whether that is a correct copy of what was actually surveilled and what the cameras recorded. We don't know that. He can't testify to that.

Tr. Vol. III pp. 180–81. The State responded,

> Judge, I asked him if he viewed the surveillance video that day. He said he did. And he viewed it. He then requested a copy and this is what is on that copy. So he said he viewed it at the time; he's reviewed it since; and it's the same copy. Chain of custody doesn't have to be prefect [(sic)] and it doesn't have to be -- it goes to weight, not admissibility so I think if he wants to try to argue that this is not accurate for some sort of reason, [he] can do that. But this lieutenant has testified as to silent witness theory and this would be allowed in under that.

Tr. Vol. III p. 181. Woodard-Ward's counsel responded that

> I'm not questioning that when he viewed the video that those two match. What I'm questioning is what he viewed, there's nobody who is willing to testify that that is an accurate copy of what occurred and the only person that can do that is somebody in IT that is familiar with the surveillance system, knows how it operates, knows that it was recorded accurately. He cannot testify to that. That's why I'm objecting.

Tr. Vol. III p. 181. Exhibit 1 was entered into evidence over Woodard-Ward's objection.[4]

[8] After the State's presentation of the evidence, the trial court granted a motion for directed verdict as to the criminal-confinement count. The State offered the following instruction:

> The law provides that it is no defense that the person with whom the accused person is alleged to have conspired with
> has not been prosecuted, or
> has not been convicted, or
> has been acquitted, or
> has been convicted of a different crime, or
> cannot be prosecuted for any reason, or
> lacked the capacity to commit the crime.

Appellant's App. Vol. II p. 211. Woodard-Ward objected to this instruction, arguing that "there's no evidence of a conspiracy between [Woodard-Ward] and anybody else." Tr. Vol. IV pp. 28–29. In allowing the instruction, the trial court stated

> Well, Mr. Mathis testified about these problems that he'd been having with multiple people. I think he said originally—well, he said a lot. I think he said 10, 15, 20. He said that several of the individuals had been removed, but some of the people were still there. And I think based on his testimony, such as it was, I think the [instruction] is appropriate[.]

---

[4] Still images from Exhibit 1 were also admitted over Woodard-Ward's objection as Exhibits 15, 16, 17, 18, and 19.

Tr. Vol. IV p. 29.

[9] The jury ultimately found Woodard-Ward guilty of battery and not guilty of possessing a dangerous device as a prisoner. On July 8, 2024, the trial court imposed a one-year sentence fully suspended except for time served.

## Discussion and Decision

[10] Woodard-Ward contends that the trial court abused its discretion in admitting certain evidence and in instructing the jury. He also contends that the evidence is insufficient to rebut his self-defense claim.

### I. Admission of Evidence

[11] The admission of evidence is a matter that we generally "leave to the discretion of the trial court." *Clark v. State*, 994 N.E.2d 252, 259–60 (Ind. 2013). "We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260. "[W]e will not reverse the decision to admit or exclude evidence if that decision is sustainable on any ground." *Carpenter v. State*, 15 N.E.3d 1075, 1078 (Ind. Ct. App. 2014), *trans. denied*.

[12] Woodard-Ward contends that the trial court abused its discretion in admitting Exhibits 1, 15, 16, 17, 18, and 19, arguing that the State failed to adequately authenticate or lay a proper foundation for the Exhibits. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent

must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ind. Evidence Rule 901(a). One way in which a proponent might do so is to offer testimony from a witness with knowledge "that an item is what it is claimed to be[.]" Evid. R. 901(b)(1).

> The foundation required for admitting a photograph depends on its use at trial. In most cases, photos are only demonstrative, visual aids that assist in the presentation and interpretation of testimony—in which case testimony ... that [they] accurately depict the scene or occurrence as it appeared at the time in question is an adequate foundation.
>
> But other photos—for example, security-camera footage—are admitted as substantive evidence as silent witness[es] as to what activity is being depicted. For this silent witness purpose, the foundational requirements ... are vastly different [than] the foundational requirements for demonstrative evidence. In such cases, [t]he witness is not required to testify that the photograph is an accurate representation of the scene as it appeared—and indeed, often could not so testify since he or she was not necessarily there to observe the scene on that day. Instead, the witness must give identifying testimony of the scene that appears in the photograph[s], sufficient to persuade the trial court ... of their competency and authenticity to a *relative certainty*.

*Knapp v. State*, 9 N.E.3d 1274, 1282 (Ind. 2014) (brackets, ellipses, and emphasis in original, internal citations and quotations omitted).

> Absolute proof of authenticity is not required. Rather, the proponent of the evidence must establish only a reasonable probability that the evidence is what it is claimed to be, and may use direct or circumstantial evidence to do so. Once this reasonable probability is shown, any inconclusiveness of the

> evidence's connection with the events at issue goes to evidential weight, not admissibility.

*Richardson v. State*, 79 N.E.3d 958, 962 (Ind. Ct. App. 2017) (internal citations omitted), *trans. denied*.

[13] Woodard-Ward claims that in order to establish an adequate foundation, the State should have been required to call a witness from the jail's IT department to testify about the functionality of the recording software. For its part, the State argues that it was unnecessary to call a witness from the IT department because "[t]he jail surveillance was what it purported to be, and it was properly admitted. Exhibit 1 (and stills from it in Exhibits 15 through 19) were taken from a jail surveillance system that could only be accessed by a limited and qualified group of people." Appellee's Br. p. 11. As the State points out, Lieutenant Ward, one of the limited group of persons with access to the recording, testified that there was no way for him to manipulate or alter the recording. This testimony created a reasonable inference that there was no way for it to be altered by anyone. *See McCallister v. State*, 91 N.E.3d 554, 562 (Ind. 2018) (stating that for surveillance footage to be admitted as substantive evidence, the strong showing of authenticity and competency should include proof that the evidence had not been altered). Lieutenant Ward testified that he had reviewed the footage multiple times and that it had not been altered and was still the same footage as he had originally viewed a short time after the battery. Woodard-Ward has failed to establish that the trial court abused its

discretion in finding Lieutenant Ward's testimony sufficient to authenticate Exhibit 1.

## II. Jury Instructions

[14]     We review a trial court's manner of instructing the jury for an abuse of discretion. To determine if a trial court abused its discretion, we consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given.

*Owen v. State*, 210 N.E.3d 256, 267–68 (Ind. 2023) (internal citation and quotation omitted). Like errors in the admission of evidence, errors pertaining to jury instructions can be harmless. *See Bayes v. State*, 791 N.E.2d 263, 264 (Ind. Ct. App. 2003), *trans. denied*.

[15]     The jury instruction at issue in this case read as follows:

> The law provides that it is no defense that the person with whom the accused person is alleged to have conspired with
>     has not been prosecuted, or
>     has not been convicted, or
>     has been acquitted, or
>     has been convicted of a different crime, or
>     cannot be prosecuted for any reason, or
>     lacked the capacity to commit the crime.

Appellant's App. Vol. II p. 211. This instruction is commonly given in cases where a defendant is charged with acting in accordance with a conspiracy. Woodard-Ward objected to this instruction, arguing that "there's no evidence

of a conspiracy between [Woodard-Ward] and anybody else." Tr. Vol. IV pp. 28–29. While a more appropriate instruction would have been on the theory of accomplice liability, and assuming error, we conclude that any error in giving the challenged instruction was harmless.

[16] Indiana Appellate Rule 66(A) provides that

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

"When an appellate court must determine whether a non-constitutional error is harmless, [Appellate] Rule 66(A)'s 'probable impact test' controls." *Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023). "Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below." *Id.* (citing *Mason v. State*, 689 N.E.2d 1233, 1236–37 (Ind. 1997)).

[17] In this case, our confidence in the outcome of the proceedings is not undermined by the trial court's decision to give the challenged jury instruction. In claiming that he was prejudiced by the trial court's decision to give the challenged jury instruction, Woodard-Ward claims that the use of the word conspired "may have warped how the jury approached the self-defense question, especially since Woodard-Ward's first two charges listed a co-defendant." Appellant's Br. p. 23. We agree with the State that Woodard-

Ward's argument as to what possible impact the instruction may have had on his self-defense claim was mere speculation, which does not support a claim of reversible error. *See Brown v. State*, 746 N.E.2d 63, 68 (Ind. 2001) (rejecting a claim of prejudice that consisted entirely of speculation). Moreover, there was significant independent evidence of Woodard-Ward's guilt such that the challenged instruction was not likely to have had a probable impact on the outcome of the case. Given that Woodard-Ward's claim of error was based completely on speculation coupled with the significant independent evidence of Woodard-Ward's guilt, we conclude that any error in giving the challenged jury instruction was, at most, harmless.

## III. Sufficiency of the Evidence

[18] "A valid claim of self-defense is legal justification for an otherwise criminal act." *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000).

> In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. We neither reweigh the evidence nor judge the

credibility of witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.

*Wilson v. State*, 770 N.E.2d 799, 800–01 (Ind. 2002) (internal citations omitted). "The State may rebut a self-defense claim by affirmatively showing that the defendant did not act to defend himself or by relying on the evidence elicited in its case-in-chief." *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999).

[19] Woodard-Ward asserted at trial that he had acted in self-defense. He claims that

> [b]ut for Mathis marching down to [his] cell and attacking him, there would have been no fight. Because no reasonable jury could have concluded that the State disproved [his] claim beyond a reasonable doubt, this Court should reverse [his] conviction for Level 5 felony battery for lack of sufficient evidence.

Appellant's Br. p. 24. We disagree.

[20] While the evidence establishes that Mathis had initiated the altercation, the evidence also establishes that Mathis had attempted to retreat from the altercation prior to Woodard-Ward battering him. Mathis had attempted to leave Woodard-Ward's cell before being pulled back in by Twitty and battered by Woodard-Ward. We have held that continued aggression or violent acts after an attempted retreat sufficiently rebuts a claim of self-defense. *See Hollowell*, 707 N.E.2d at 1021 (noting that the victim, who was alleged to have

instigated the altercation with defendant, had attempted to retreat prior to the defendant's act of repeatedly stabbing the victim and finding that sufficient evidence existed from which the jury could reasonably have found that the defendant had not validly acted in self-defense). After Mathis had attempted to retreat, Woodard-Ward battered him, stomping on his head "about four or five times[,]" causing him to suffer significant injuries. Tr. Vol. III p. 148. Given the evidence indicating that the battery had occurred after Mathis had attempted to retreat, we conclude that the evidence most favorable to the judgment was sufficient to permit the fact-finder to determine that the State had disproven Woodard-Ward's self-defense claim.

[21] The judgment of the trial court is affirmed.

Pyle, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Casey A. Farrington
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana